UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


```
                             )
ENTEGRIS, INC.,              )
                             )
          Plaintiff,         )
                             )      Civil Action No. 03-10392-GAO
v.                           )
                             )
PALL CORPORATION,            )
                             )
          Defendant.         )
                             )
```


BEFORE THE HONORABLE GEORGE A. O'TOOLE, JR.
UNITED STATES DISTRICT JUDGE


**MOTION HEARING**



John J. Moakley United States Courthouse
Courtroom No. 9
One Courthouse Way
Boston, Massachusetts  02210
Wednesday, March 18, 2009
2:50 p.m.



Marcia G. Patrisso, RMR, CRR
Official Court Reporter
John J. Moakley U.S. Courthouse
One Courthouse Way, Room 3510
Boston, Massachusetts  02210
(617) 737-8728

Mechanical Steno - Computer-Aided Transcript

PDF created with pdfFactory trial version www.pdffactory.com

```
 1   APPEARANCES:

 2        ROPES & GRAY LLP
          By: Dalila A. Wendlandt, Esq.
 3             Douglas E. Chin, Esq.
          One International Place
 4        Boston, Massachusetts  02110
          On Behalf of Entegris, Inc.
 5
          LEYDIG, VOIT & MAYER, LTD.
 6        By: H. Michael Hartmann, Esq.
               Mark E. Phelps, Esq.
 7        Two Prudential Plaza - Suite 4900
          Chicago, Illinois  60601-6780
 8        On Behalf of Pall Corporation

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

<u>**P R O C E E D I N G S**</u>

1
2          Next up for a motion hearing will be Entegris, Inc.,
3    versus Pall Corporation, which is Docket 03-10392.
4          Would counsel please identify yourselves for the
5    record.
6          MS. WENDLANDT:  Your Honor, Dalila Wendlandt for
7    Entegris, and with me I have Doug Chin from Ropes & Gray.
8          MR. HARTMANN:  I'm Mike Hartmann for Pall Corporation,
9    the defendant, and with me is Mark Phelps.
10         Good afternoon, Judge.
11         THE COURT:  Good afternoon.
12         I think this is Entegris's motion to amend the
13    protective order.
14         MS. WENDLANDT:  That is correct, your Honor.
15         This is a dispute, your Honor, about the terms of a
16    prosecution bar.  It is not a dispute between the parties as to
17    whether or not the protective order should be amended at all to
18    include a prosecution bar.  And that fact makes this case very
19    different from all the cases upon which Pall relies in support
20    of its position.
21         Now, the parties have extensively briefed the changed
22    circumstances that require the amendment that both parties
23    agree is needed for the protective order, and I won't belabor
24    that.  It's extensively briefed in the opening memorandum, the
25    surreply, the reply and the opposition.

1          I wanted just to take this time today to highlight

2    three errors and inconsistencies of Pall's position.  The first

3    is the question whether Pall's counsel is a competitive

4    decision-maker for Pall; the second is whether the

5    post-issuance -- that is, proceedings that happened in the

6    Patent and Trademark Office after a patent has issued, such as

7    reexamination proceedings -- require different considerations

8    than those that apply to a pending patent application; and,

9    finally, Pall's notion that -- the concerns that Entegris has

10   about its confidential information is merely hypothetical.

11          With regard to the first, your Honor, Pall's trial

12   counsel is a competitive decision-maker.  There really can be

13   no doubt.  And how do we know?  The reason we know is because

14   Pall's position is that there needs to be a prosecution bar in

15   this case.  They agree that it needs to apply to pre-issuance

16   proceedings as well as to re-issued proceedings where the

17   patent can be broader.  Having acknowledged that, Pall's taken

18   position -- the opposite position -- that we haven't shown that

19   they are, on an individual-by-individual basis, a competitive

20   decision-maker, is simply wrong.  Pall acknowledged in 2003

21   when these cases began that a prosecution bar was necessary,

22   and the parties entered into a side agreement where we agreed

23   that people prosecuting and people litigating would be

24   separate.

25          Pall has structured its patent legal advice separately

1    geographically.  Pall uses its Leydig D.C. office for

2    prosecution matters under the supervision of John Belz, who has

3    been prosecuting patents for Pall in this filter technology

4    area for at least the last 15 years.  And then its litigation

5    is run out of D.C., so there's this physical separation -- a

6    tacit acknowledgment that prosecuting patents for Pall --

7    patent prosecutions for Pall is a competitive decision-making

8    aspect of Pall's business.

9         So the question in this case is not whether or not

10   Pall's trial counsel is a competitive decision-maker; they are.

11   And this makes that -- this case very different from the cases

12   that Pall relies upon.  Each of those cases -- *Avocet*,

13   *Donnelley, Eli Lilly*, *In re Sibia* -- involve cases where the

14   party opposing the prosecution bar opposed it entirely, not

15   just to re-issuance proceedings or reexamination proceedings;

16   they did so entirely.

17        In this case Pall, through its actions, has

18   acknowledged that it is a competitive decision-maker -- Pall's

19   counsel is a competitive decision-maker on behalf of Pall.  In

20   fact, that fact makes the decision in *Presidio* from the

21   Southern District of California in 2008 more applicable to this

22   case than any of the cases cited by Pall.  That's a case that

23   Integra cites.

24        In that case the plaintiff, who opposed the

25   prosecution bar for one particular counsel, agreed that a

PDF created with pdfFactory trial version www.pdffactory.com

1    prosecution bar at all was necessary.  And because of that the

2    court -- the Southern District of California concluded that --

3    having made that admission, that there is a prosecution bar

4    necessary at all; therefore, the party had admitted that the

5    attorney at issue was a competitive decision-maker for the

6    party.

7         The second point I'd like to make is Pall's

8    inconsistency.  They claim that because in reexamination

9    proceeding claims can only be narrowed, that different

10   considerations apply.  That is simply not the case.  Entegris's

11   position is that no one who is crafting claims before the

12   Patent and Trademark Office should do so with the knowledge of

13   its chief competitor's confidential information.

14        Everyone agrees that this should be the case for

15   pending patent applications, and everybody agrees that in the

16   case of broadening reissue applications -- that is, when the

17   patent has already issued and it goes back to the patent office

18   to be broadened -- that no one should use confidential

19   information gained during the litigation or should be exposed

20   to that information while at the same time crafting claims.

21        Entegris's position is that even in cases such as

22   reexamination proceedings where the claims can only be

23   narrowed, the same considerations apply; those claims should

24   not be narrowed by counsel who has access to confidential

25   information of its principal competitor.

1          This was the same reasoning that led the court in

2     *Visto* in the Eastern District of Texas in 2006 to apply a

3     prosecution bar to reexamination proceedings, and it's very

4     similar to what the federal circuit did in 2005 in *Grayzel*.  In

5     that case the protective order had a provision, like the

6     provision in Paragraph 9 of the current protective order, which

7     said confidential information may only be used for purposes of

8     the litigation.  In *Grayzel*, the federal circuit upheld an

9     injunction against the patentee -- not just the patentee's

10    counsel, but the patentee himself -- from participating in the

11    reexamination.

12          It also makes -- this fact is also -- distinguishes

13    the *Hochstein* case.  Pall cites the *Hochstein* case for the

14    proposition that that district court allowed participation in a

15    reexamination proceeding.  But if you look at the case, your

16    Honor, it's very different from the circumstances we have here.

17    In that case the plaintiff, who wanted to participate in the

18    reexamination proceeding, pledged not to amend those claims at

19    all.  The plaintiff's counsel's position was that they would

20    only argue that the claims, as they were, survived despite the

21    prior art that came to the attention of the PTO.

22          Also, in that case the plaintiff had no one like

23    Mr. Belz in the D.C. office of Leydig who had the technical

24    expertise of litigation counsel.  And finally, the financial

25    disparities of the parties in the *Hochstein* case were such that

PDF created with pdfFactory trial version www.pdffactory.com

1   the court felt that the defendant, Microsoft Corporation in

2   that case, was taking advantage strategically of a

3   reexamination procedure and a prosecution bar to disadvantage

4   the plaintiff.

5           Here Pall has not come forward with a pledge, nor do I

6   believe it will come forward with a pledge, that at any

7   post-issuance examination proceedings it would not amend the

8   claims.  Indeed, we have evidence to the contrary.  There are

9   two currently pending reexaminations of patents that Pall has

10  asserted against Entegris in New York.  And in those cases Pall

11  counsel, John Belz, along with the assistance of Pall's present

12  trial counsel, has amended the claims.  So I would suggest that

13  the *Hochstein* case is entirely different from the matter we

14  have before us.

15          And, finally, Pall has taken the position that

16  Entegris's concerns about confidentiality are merely

17  hypothetical.  This is simply not the case.  One of the

18  exhibits that we have presented to your Honor are the document

19  requests that Pall has submitted to Entegris, and which we have

20  an obligation to respond to.

21          There are 76 separate requests asking for information

22  concerning the methods of the manufacturer of Entegris's

23  devices covered by the patent, the design, and any evaluations,

24  any tests.  So Pall's claim that there is no confidential

25  information at issue is simply -- cannot be squared with the

PDF created with pdfFactory trial version www.pdffactory.com

1   request that it has outstanding.

2          Moreover, there isn't a specific concern with regard

3   to the products at issue in this case.  We have now, since

4   2003, evolved.  The parties are now entangled in five separate

5   litigations concerning patent infringement.  It's not the first

6   case, as it was in 2003.  There are now five pending cases.

7   Four of those involve the products at issue in this case:

8   Pall's EZD-3 product and Entegris's Impact line of products.

9   Because of that we think that the concern of confidentiality

10  is, in fact, not hypothetical, and actually very real.

11         So therefore, in conclusion, we think, you know, that

12  the issue here is very different from the cases that Pall

13  relies upon.  The prosecution bar is necessary, and there's no

14  reason why Pall's counsel should be in a position to

15  inadvertently use or disclose any information that it gains in

16  this litigation for purposes of crafting its claims, whether

17  they are pending patent application claims, whether they are

18  reissue claims or reexamination claims.  There is no reason why

19  anyone with access to a competitor's -- its chief competitor's

20  confidential information should be allowed to prosecute patents

21  and determine the scope of claims.

22         Thank you, your Honor.

23         THE COURT:  Mr. Hartmann?

24         MR. HARTMANN:  Thank you, Judge.  I apologize if my

25  voice isn't quite there, but I have a feeling I suffer from the

PDF created with pdfFactory trial version www.pdffactory.com

1    same malady you are.

2          THE COURT:  You're in good company.

3          MR. HARTMANN:  Your Honor, Entegris here wants a

4    remedy which no case -- no court has ever granted as far as

5    either one of us has been able to find, and that is a

6    prosecution bar relating to a patent that's not even in suit

7    here.  So what we see is an attempt to leverage somebody else's

8    reexamination on somebody else's patent in another lawsuit into

9    some kind of a tactical advantage, quite frankly, to

10   disqualify, to some extent, Mr. Phelps, myself, you know,

11   our -- all the lawyers participating in this litigation.

12          The New York court has addressed it and has said, "No,

13   we're not going to do that" in another case that Pall filed in

14   New York against Entegris where they tried the same thing.  No

15   court that I know of has ever done anything like this.  This is

16   not a situation where we -- let's say, the Pall Corporation,

17   filed a reexamination against any of the patents in suit before

18   your Honor in this case or even in the consolidated case.  This

19   is a completely different patent case.

20          Now, of course what it leads to is the question of

21   whether any of the information can possibly be even relevant --

22   that is, the confidential information that we might see could

23   even be relevant -- in this reexamination.  I suggest it can't

24   be as a matter of fact and as a matter of law; as a matter of

25   fact because they're different patents in suit here than are

1    involved in the reexamination, and as a matter of law because

2    just recently Judge Robinson in Delaware has addressed that

3    matter.

4         We submitted the case -- or we attempted to submit the

5    case in a supplemental submission, but I think the Court can

6    take notice of it -- judicial notice of it -- whether or not

7    the formal motion is granted.  It's an interesting case, just

8    decided within the last couple of weeks, in which she addressed

9    it.  And she indicated that the reexamination examines the

10   prior art only.

11        It's like another validity look that the patent office

12   does.  It doesn't care what Entegris's products are; it doesn't

13   care what Pall's products are; it doesn't care what the markets

14   are.  It looks at properly positioned, properly positive prior

15   art in the patent office, and it asks the examiner to please

16   have another look at this supposedly new prior art to see

17   whether perhaps -- because the examiner didn't know about it

18   before, perhaps a decision should be to narrow the claims, or

19   to strike down the claims altogether.  So this is -- as a

20   matter of law, I think Judge Robinson is entirely correct, that

21   there is no relevance at all to this confidential information.

22        So now where it leads, of course, further is that, in

23   a reexamination, at most one can limit the claims.  You always,

24   as a patentee, hope to come away without having made any

25   amendments, but sometimes amendments are appropriate in light

1    of the new prior art, and so you amend the claims.  But the

2    only way you can amend it -- and I think we agree on this,

3    Entegris and Pall -- is that you can narrow them -- that's all

4    you can do -- so that the new claims have all the limitations

5    of the old claims plus some more limitations.  So they become

6    much narrower, so they would be even less of a threat, if you

7    will, to an accused infringer.

8          So, you know, we are suggesting that there's no

9    showing that there's any likelihood of any harm by having no

10   prosecution bar; there's no need for any prosecution bar.  The

11   argument that there is some harm is basically fabricated.  I

12   mean, it's all hypothetical.  I would challenge Ms. Wendlandt

13   to have come up with some concrete showing of what the harm

14   could possibly be.  They failed to do so.  They're just waving

15   their hands in the air and they're talking about -- I heard her

16   say something about tacit acknowledgments about, you know,

17   having our prosecution handled by our Washington office.

18         We have sort of hypothetical, some inadvertent

19   disclosure arguments without a single showing of what is it

20   that we would inadvertently disclose.  I mean, how would that

21   even occur in a reexamination relating to some other patent as

22   it's pending right now?  So I think if we know one thing, it is

23   that courts have more recently -- in newer cases, all have

24   decided that, I think, an applicant for a prosecution bar ought

25   to make a specific showing.  There ought to be some factual

PDF created with pdfFactory trial version www.pdffactory.com

1    record that underlies the need for a prosecution bar.

2           In this case where the patent in this lawsuit isn't

3    even the one that is in reexamination, there's been a total

4    failure of proof, a total failure of a record, upon which the

5    Court could decide that there is the requisite possible harm to

6    Entegris and weigh that against the possible prejudice as to

7    Pall.

8           So let me address the prejudice for a moment.  We've

9    represented Pall since the 1980s, I think.  I don't even know

10   exactly when it was, but for many, many years.  We have a

11   Washington office, to be sure, but they don't only do

12   prosecution -- or some prosecution is done in our Chicago

13   office; some prosecution is done in our Washington office.  So

14   this idea that somehow because we have a Washington office that

15   engages primarily in prosecution is some kind of an admission

16   that, you know, we need a prosecution bar is just utter

17   nonsense.  I mean, if that's the best they have, it's just so

18   flimsy -- I mean, it supports nothing.

19          If there were some showing of some -- I am for

20   prosecution bars in principle, Judge.  I think they're entirely

21   appropriate.  So if, for example, we had a situation where we

22   were prosecuting, let's say, cases that would be directly

23   related to something here in suit, some product in suit, maybe

24   that would be appropriate where we could fashion new claims,

25   let's say, to cover some new product that we might find out

PDF created with pdfFactory trial version www.pdffactory.com

1  about in Entegris's production.

2       Under those circumstances I think it's entirely

3  appropriate to have a prosecution bar.  But what is not

4  appropriate is where you have a situation where you cannot

5  fashion new claims.  There is no need for a prosecution bar.

6       And that's the fundamental difference here.  There was

7  no need for it when we -- we entered into the agreement in

8  2004.  When we had a protective order in 2004, we amended it.

9  We agreed there should be a prosecution bar that covered new

10  claims -- the drafting of new claims -- to prevent either side

11  from attempting to take advantage of some discovery that we got

12  from the other side in order to fashion patent coverage on

13  those products.

14       That's not the situation that we are facing today on

15  this motion.  The very fact that their motion is entitled "A

16  Motion to Amend," of course, indicates, I would think quite

17  clearly, that we agreed at the time that the prosecution bar

18  would not extend to reexaminations for the very reason that it

19  doesn't need to extend to reexaminations.  There simply isn't a

20  danger in reexaminations that claims will be expanded, and

21  expanded unfairly, based on confidential information.

22       I would like to point out one other thing.  In

23  Paragraph 2 of the protective order, both sides agreed that all

24  the information that is produced in this action should be used

25  only for purposes of this action.  So we are already bound --

both sides are bound -- not to misuse the information:  not to

use it in patent office proceedings; not to use it for any

other action but this one.

So I think there's ample protection to Entegris.  I

think there's no need -- I think Judge Robinson expressed quite

well what the law is and under what facts prosecution bars

should apply.  And certainly there's no showing that those

facts are present in this case.

Thank you.

THE COURT:  Anything else?

MS. WENDLANDT:  Your Honor, if I may, just a few

points in rebuttal.

Mr. Hartmann's position is difficult to grasp.  First

he says no prosecution bar, then he says there was a

prosecution bar and we agree that there should be a

pre-issuance of the prosecution bar.  The fact is I take their

position to be the one in their papers and not the one

presented at oral argument, that both parties agree that the

protective order need be amended to formalize their 2003

agreement that there needs to be a prosecution bar; that Pall's

trial counsel and Entegris's trial counsel are competitive

decision-makers for the parties.  That really cannot be in

dispute.

Just to address Judge Robinson's recent decision in

*Kenexa*, that case is entirely different from this -- what is

1    presented before your Honor.  In that case the party seeking to

2    extend a prosecution bar to reexamination specifically opposed

3    that when asking for a protective order initially.  The case is

4    entirely different.  And there has been no position by Entegris

5    other than the consistent position that the prosecution bar

6    should extend to reexaminations, which was not the position of

7    the *Kenexa* defendant.

8         And finally, to answer Mr. Hartmann's challenge what

9    use could somebody in his position make of confidential

10   information -- and with all due respect, I don't think

11   Mr. Hartmann would actually do this because, as he says, it

12   would be a violation of Paragraph 9 of the protective order --

13   but here's the use:  In a reexamination proceeding, claims are

14   narrowed -- at least they're supposed to be narrowed.  So they

15   have all of the elements of the original claim and then some.

16   Someone who had access to Entegris's confidential information

17   could add the new element, knowing that it existed in

18   Entegris's products but didn't exist in the prior art.

19        Entegris's position is that nobody in this litigation

20   should be using confidential information, whether they're

21   crafting claims related to a reexamination, related to a

22   reissue or a pending patent application.  Confidential

23   information should be used, as Paragraph 9 says of the

24   protective order, solely for the purposes of this litigation,

25   and should not be used inadvertently or otherwise to craft

1    claims, whether those claims are pre issue or post issue.

2          Therefore, your Honor, we ask that you grant our

3    motion.

4          THE COURT:  As an example?

5          MR. HARTMANN:  I would point out there's a big

6    difference between a pre-issuance prosecution activity and a

7    post-issuance reexamination.  Reexamination isn't even

8    prosecution for the reasons I said.  Whenever claims are

9    broadened in reexaminations, they've been invalidated.  They're

10   invalid.  There are several cases where that's happened.  So

11   there's no danger of changing the claim scope.  None of this

12   fear is real; it is all hyped up.

13         THE COURT:  Well, I take it -- the hypothetical was

14   that it could be narrowing with respect to the parties in

15   another context but gives some strategic advantage in this

16   other context.

17         MR. HARTMANN:  Well, there would be no strategic

18   advantage because it would not expand the coverage.  We

19   wouldn't have any further rights that we don't already have

20   now.  The effective rights --

21         THE COURT:  Well, it would be narrowed as to that

22   patent but -- well, okay.  I see what you --

23         MR. HARTMANN:  It's difficult to conceive of any

24   advantage one could --

25         THE COURT:  Let me ask a different question:  This

PDF created with pdfFactory trial version www.pdffactory.com

1    controversy arose, I gather, because there were pending

2    reexamination proceedings, which I think the briefs have said

3    are wrapped up somehow, right?

4        MS. WENDLANDT:  Your Honor, there's some confusion on

5    that.  Pall represented to this Court and to Entegris that the

6    reexamination was essentially over.  Looking at the docket of

7    the case -- the other case that they have related to these same

8    patents -- there was a notation in there that the parties --

9    that is, Cuno, who's not obviously a party to this action but

10   was a party who initiated the reexamination in the New York

11   proceedings -- Cuno and Pall should discuss the other prior art

12   that Cuno had.  We're not -- that would be made part of the

13   reexamination.  So it's my understanding that the reexamination

14   is not closed.

15       But just further to the point, the point is not

16   whether -- not that particular reexamination.  That's what

17   changed the circumstances and opened Entegris's eyes to the

18   possibility of the exchanger using its confidential

19   information.  And that's why Paragraph 9 of the protective

20   order is not enough and why we need an express prosecution bar

21   that extends to the reexamination proceedings.

22       We have an example of one out there; there may be

23   others.

24       THE COURT:  Well, how would a development in that

25   reexamination have impacted Entegris?  In the real ones?  In

PDF created with pdfFactory trial version www.pdffactory.com

1    the Cuno one?

2         MS. WENDLANDT:  In the Cuno one --

3         THE COURT:  In other words, what would have happened

4    there that would have impacted Entegris's interest because of

5    the participation of the lawyers?

6         MS. WENDLANDT:  Exactly the situation that -- the

7    hypothetical that I was posing, that currently Mr. Hartmann and

8    Mr. Phelps do not have attorneys'-eyes-only information from

9    Entegris.  They have asked for that kind of information in this

10   litigation, and the parties have not exchanged that information

11   because they have had this dispute for the last several months

12   concerning the protective order.

13        If they had that information, they could use it to

14   craft a claim that included Entegris's inner filter pleating

15   configuration but got around the Soviet or Japanese reference

16   that is at issue in that reexamination.  So they add, you know,

17   a claim that says -- you know, I can't think of a hypothetical,

18   but they add a claim that says manufactured in this particular

19   way, which our documents would show how those -- how Entegris's

20   filters are manufactured.

21        Now, that is not an element in the prior art, it's not

22   an element in their current claims, but they could add it, and

23   so capture our products while at the same time getting --

24        THE COURT:  It would be a fair patent-not-in-suit-yet,

25   right?

PDF created with pdfFactory trial version www.pdffactory.com

1          MS. WENDLANDT:  That's right.  And the point of that

2    is it's not that the patent is not in suit; it's that these

3    patents cover a product line.  And the confidential information

4    that Pall has sought is not confined to aspects covered by the

5    patents in suit in these three litigations.  So that -- and nor

6    are the documents written patent by patent.

7          So we have examples of presentations related to the

8    Impact -- the Impact product line.  Some of those presentations

9    concern the filter technology similar to the "quick connect"

10   mechanism that's at issue in this case; parts of those

11   presentations concern manufacturing methods, parts of those

12   concern the inner workings of the pleating configurations which

13   are at issue in the New York litigation.

14         And so what we're requesting from your Honor is to

15   give us some sense of certainty as to what protection this

16   confidential information will be allowed to have.

17         MR. HARTMANN:  I want to make two points.  One is,

18   simply, we can't just add to the present claims something about

19   the Entegris filter.  We're limited to the disclosure in the

20   patent, the underlying specification of the patent.

21   Ms. Wendlandt seems to think we can just add anything at any

22   time.

23         That's just not so.  This is what Judge Robinson, of

24   course, relies on.  We're limited -- we're strictly limited to

25   what is disclosed in the specification.  And if it is disclosed

PDF created with pdfFactory trial version www.pdffactory.com

1  in the specification, well, then indeed we are and are entitled

2  to use any of that.  Of course.  That's what the law provides.

3  Point one.

4          Point two is we've already committed in writing in

5  that protective order not to use the information for anything

6  other than this litigation.  So, again, this is a sort of

7  fanciful hypothetical that is, you know, difficult to follow.

8  I mean, there just isn't any showing of any concrete harm.

9          And thirdly, your Honor, I don't know if you've ever

10  seen a reexamination certificate.  Here's one that just came

11  down yesterday.  There were two reexaminations that Cuno has

12  precipitated; one on a product patent; the other one was an

13  equivalent process patent.  The first one on the process patent

14  came down in which the claims were changed by adding to the

15  claims an element that was formerly in one of the dependent

16  claims.  So we took an element of the dependent claim, put it

17  in the main, independent claim as well.

18          So it's sort of a classic example of narrowing the

19  claim.  I'd be happy to hand it up if your Honor would like to

20  take a look at it.

21          But the other one, the product patent that is also in

22  reexamination, has not yet -- or the examiner has not yet

23  issued what is called this reexamination certificate.  I don't

24  know if -- the patent office has its own timetables.  I

25  don't --

PDF created with pdfFactory trial version www.pdffactory.com

1          THE COURT:  Is there an office action that indicates

2     they will?  I mean, is there --

3          MR. HARTMANN:  Yes.

4          THE COURT:  Okay.

5          MS. WENDLANDT:  Your Honor, can I just -- one more

6     thing on the disclosure issue.  Yes, all patentees are limited

7     to claim only that which they disclose.  The point is that they

8     should not be claiming based on confidential information that

9     they have of their chief competitors through litigation.  That

10    is true for a pending patent application, as to which Pall says

11    there should be a prosecution bar, and it's also true for a

12    reexamination.

13         So the fact that Pall is limited to its disclosure is

14    really not a distinction between reexamination proceedings as

15    to which they don't want to have a prosecution bar and pending

16    patent applications as to which they concede one is necessary.

17         THE COURT:  Okay.  I'll reserve on it and let you

18    know.  Thank you.

19         Let me turn to the other motion, which is regarding

20    the schedule.  This is an agreed one, so I'm not sure --

21         MS. WENDLANDT:  Yes, your Honor.  The only caveat I

22    would have about the scheduling is because the parties have

23    become -- have been unable to agree on the scope of protection,

24    although --

25         THE COURT:  I'm sorry?

1          MS. WENDLANDT:  Because the parties have been unable

2     to come to an agreement on the scope of the protective order,

3     we have not been able to exchange confidential information.

4     And as a result, I suspect that status will continue until your

5     decision on the pending motion.  So I would say that we should

6     tie any schedule that we agree to to that decision.

7          MR. HARTMANN:  I think what we're saying is that the

8     August 10th date that we indicated is optimistic at this point,

9     and we may well have to get some more time.

10         THE COURT:  I see.  I see.  Okay.

11         MS. WENDLANDT:  That's right.

12         THE COURT:  Why don't we just take that off the table,

13    then, and let you work on a new one.  What I would suggest is

14    that you take a look at the new local rule on Markman

15    scheduling.  It's not mandatory in the sense that it has to be

16    complied with, but it's intended to be a template which can be

17    used.  And it has a few more steps to set up the thing.  And so

18    keep that -- just keep that in mind as you negotiate the new

19    schedule.

20         So I'll resolve the pending issue and then after that

21    you can submit a new proposed -- there's no question an

22    extension will be granted; it's just a question of what it will

23    look like.  And so why don't you work on that.

24         But I would just recommend that you have some eye

25    towards the -- again, not slavish, necessarily, but some

PDF created with pdfFactory trial version www.pdffactory.com

1    attention to the local rule.

2            MS. WENDLANDT:  Certainly, your Honor.

3            THE COURT:  Okay.

4            MR. HARTMANN:  Thank you.

5            THE COURT:  Thank you.

6            MS. WENDLANDT:  Thank you.

7            THE CLERK:  All rise.

8            Court is in recess.

9            (The proceedings adjourned at 3:20 p.m.)

10

11                C E R T I F I C A T E

12            I, Marcia G. Patrisso, RMR, CRR, Official Reporter of

13    the United States District Court, do hereby certify that the

14    foregoing transcript constitutes, to the best of my skill and

15    ability, a true and accurate transcription of my stenotype

16    notes taken in the matter of Civil Action No. 03-10392-GAO,

17    Entegris, Inc., v. Pall Corporation.

18

19                        /s/ Marcia G. Patrisso
                          MARCIA G. PATRISSO, RMR, CRR
20                        Official Court Reporter

21

22

23

24

25