**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ENTEGRIS, INC., ) | Consolidated Cases |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 03-10392-GAO |
| ) | |
| PALL CORPORATION, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| PALL CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | Civil Action No. 04-10887-GAO |
| v. ) | |
| ) | |
| ENTEGRIS, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

---

**PALL'S REPLY TO ENTEGRIS INC.'S RESPONSIVE CLAIM CONSTRUCTION
BRIEF**

---

H. Michael Hartmann
Mark E. Phelps
L. Scott Beall
LEYDIG, VOIT & MAYER, LTD
Two Prudential Plaza, Suite 4900
Chicago, IL 60601
(312) 616-5600

Gary R. Greenberg
Louis J. Scerra
GREENBERG TRAURIG LLP
One International Place,
Boston, Massachusetts 02110
(617) 310-6000

Attorneys For Defendant
PALL CORPORATION

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................... 1

II.     ENTEGRIS CONTINUES TO LIMIT THE CLAIM SCOPE AND ANALOGOUS
        PRIOR ART BY IMPORTING LIMITATIONS FROM THE PREFERRED
        EMBODIMENT .............................................................................................. 1

        A.      "fluid processing module" ................................................................... 2

                1.      The Court Implicitly Construed This Claim In The Context Of Sumitomo –
                        Unlike Entegris, Pall Does Not Rely On Extrinsic Evidence .......................... 2

                2.      When Entegris Took A Position Before The USPTO It Construed "Fluid
                        Processing Module" As "Fluid Processing Module" ...................................... 3

        B.      "vent position" .................................................................................... 5

                1.      The Applicant's Chose To Claim A "Vent Position" ...................................... 5

                2.      "Vent Position" Is Not Required To Vent "Substantially All" Gas ................. 7

        C.      Entegris Is Wrong In Adding "Metered" And "Onto A Substrate, Such As A
                Semiconductor Wafer" To The Term "Dispense Pump" ................................. 7

        D.      "disposable" ........................................................................................ 8

                1.      Entegris' Position Is Contrary To This Court's Prior Ruling Based Upon A
                        Complete Record And Analysis ..................................................................... 8

                2.      The '667 And '424 Patent Specifications Do Not Define "Disposable Fluid
                        Separation Module" ....................................................................................... 9

                3.      When "Disposable" Became An Issue, This Court Correctly Found It To Be
                        Non-Limiting ................................................................................................ 10

                4.      Expert Opinions Cannot Overrule Intrinsic Evidence .................................. 10

        E.      "quick-connect manifold" .................................................................. 11

                1.      Pall Agrees That Quick-Connect Includes Disconnection ............................. 11

                2.      Entegris Improperly Adds The Limitation "Disposable" ............................... 11

                3.      Any Engagement "Effected Rapidly And Eas[ily]" Is "Quick-Connect" ...... 12

        F.      "receptor" ........................................................................................... 12

                1.      A "Receptor" Is Not Limited To Receiving A Separation Module ................ 12

                2.      The Receptor Is Not Always Attached To The Fluid Connector Member ..... 13

G.     "Module" (As Contrasted With Entegris' Construction Of "Separation Module") ........................................................................................................................... 14

       1.    The Intrinsic Evidence Uses "Capable Of" ..................................................... 14

       2.    Entegris Proposed "Separation Module" For Construction And Now Seems To Desire The Construction Of "Disposable Fluid Separation Module" ....... 15

H.     "Gas Vent" Does Not Require The Extraneous Limitation "Substantially All" .. 15

I.      "At Least One Connector That Is A Gas Vent From The Housing" Does Not Require The Extraneous Limitation "Substantially All" ...................................... 16

J.      The Separation Elements In The Claim Terms "A Separation Element Contained Within The Housing" And "A Separation Element Within The Housing" Are Not Required To Be Permanently Secured Within The Housing ................................ 17

III.    PALL PROVIDES EXPLANATORY CORRELATION BETWEEN CLAIM LANGUAGE AND AGREED-UPON CONSTRUCTIONS ........................................... 18

IV.    CONCLUSION – ENTEGRIS' CONSTRUCTIONS SHOULD BE REJECTED IN FAVOR OF PALL'S CONSTRUCTIONS ...................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*3M Innovative Props. Co. v. Avery Dennison Corp.*,
    350 F.3d 1365 (Fed. Cir. 2003) ................................................................................. 4, 9

*Allen Eng'g Corp. v. Bartell Indus., Inc.*,
    299 F.3d 1336 (Fed. Cir. 2002) .................................................................................. 8

*Boston Scientific SciMed, Inc. v. ev3 Inc.*,
    502 F. Supp. 2d 931 (D. Minn. 2007) ...................................................................... 18

*Bristol-Myers Squibb Co. v. Ben Venue Laboratories, Inc.*,
    246 F.3d 1368 (Fed. Cir. 2001) .................................................................................. 9

*C.R. Bard, Inc. v. M3 Systems, Inc.*,
    157 F.3d 1340 (Fed. Cir. 1998) ................................................................................ 13

*Free Motion Fitness, Inc. v. Cybex Int'l, Inc.*,
    423 F.3d 1343 (Fed. Cir. 2005) ......................................................................... 10, 15

*In re Gardiner*,
    171 F.2d 313 (C.C.P.A. 1948) .............................................................................. 9, 12

*Jonsson v. Stanley Works*,
    903 F.2d 812 (Fed. Cir. 1990) ................................................................................. 18

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995) ..................................................................................... 3

*Pause Tech v. TiVo, Inc.*,
    419 F.3d 1326 (Fed. Cir. 2005) ............................................................................... 12

*Rambus, Inc. v. Infineon Tech. AG*,
    318 F.3d 1081 (Fed. Cir. 2003) ......................................................................... 4, 5, 12

*SRI Int'l v. Matsushita Elec. Corp.*,
    775 F.2d 1107 (Fed. Cir. 1985) (en banc) ............................................................... 18

*Syntex (U.S.A.) LLC v. Apotex, Inc.*,
    407 F.3d 1371 (Fed. Cir. 2005) ........................................................................... 9, 12

I.      **INTRODUCTION**

Pursuant to the Court's Scheduling Order dated July 20, 2010 in this case, Pall

respectfully submits this reply to Entegris' responsive claim construction brief.  In responding to

Pall's opening brief, Entegris continues its attempt to rewrite the patent claims to support

litigation-inspired arguments.  Entegris' focus is to narrowly interpret every claim term in an

effort to avoid prior art.  The proper application of the rules of claim construction supports Pall's

constructions of the patents-in-suit over Entegris'.

II.     **ENTEGRIS CONTINUES TO LIMIT THE CLAIM SCOPE AND ANALOGOUS
        PRIOR ART BY IMPORTING LIMITATIONS FROM THE PREFERRED
        EMBODIMENT**

Throughout this process to construe the disputed claim terms, Entegris has improperly

argued for importing limitations from a preferred embodiment into its proposed constructions.

Entegris has to narrow the claim scope of the patents-in-suit to avoid prior art.  Entegris'

underlying theme in support for this importation is that its proposed constructions are

"consistent" with the specification, "consistent" with the prosecution history, "consistent" with

this Court's prior rulings, and/or "consistent" with the opinion of an expert masquerading as one

of ordinary skill in the art.  The route to claim construction, however, does not simply follow

what a proposed construction is "consistent" with, but rather what the claims actually demand.

The claim terms mean what they mean in light of the intrinsic evidence, unless expressly

countermanded by this same intrinsic evidence.  Entegris fails to follow this path and its

proposed constructions should not be followed.

Entegris' criticism of Pall's approach to claim construction is that it is "dictated by Pall's

desired invalidity defense.  This approach is contrary to well-settled law."  (Entegris Resp. at 1.)[1]

---

[1] "Entegris Br. at ___" refers to Plaintiff Entegris, Inc.'s Opening Claim Constriction Brief, D.I. 191;
"Nayfeh Decl. ¶__" refers to the Declaration of Dr. Samir A. Nayfeh in Support of Entegris, Inc.'s

Once again, Entegris avoids the citation of any of this "well-settled law" because virtually all of Entegris' constructions are litigation inspired. Entegris should not criticize Pall's constructions as they are all dictated by the application of the rules of claim construction.

### A.   "fluid processing module"

The parties' proposed constructions are reproduced below.

| Claim | Claim Term (*see* Exh. G) | Entegris' Proposed Construction | Pall's Proposed Construction |
|---|---|---|---|
| '907 Patent All Asserted Claims | "fluid processing module" | Fluid separation module | Fluid processing module |

Pall's proposed construction derives from the claim language, the specification, the prosecution history and this Court's prior implicit construction of this term – no extrinsic evidence. Entegris relies on the arguments of Dr. Nayfeh. Entegris' proposed construction appears to be an insupportable attempt to distinguish the Sumitomo references.

### 1.   The Court Implicitly Construed This Claim In The Context Of Sumitomo – Unlike Entegris, Pall Does Not Rely On Extrinsic Evidence

Entegris misreads Pall's construction of "fluid processing module" and its relation to the prior art Sumitomo references. Pall never relied on the Sumitomo references in support of its construction of this claim term. This Court equated the Sumitomo humidifier to a fluid processing module. (03-cv-10392 D.I. 106 at 9) ("the humidifier (or fluid processing module)"). As this Court stated, the Sumitomo references pertain to humidification modules for oxygen

---

Opening Claim Construction Brief, D.I. 193; "Entegris Resp. __" refers to Plaintiff Entegris, Inc.'s Responsive Claim Constriction Brief, D.I. 201; "Pall Mem. __" refers to Pall's Opening Memorandum on Claim Construction, D.I. 190; "Exh. __" refers to the exhibits to Pall's Opening Memorandum on Claim Construction; "Pall Opp. __" refers to Pall's Opposition to Entegris' Opening Claim Construction Brief, D.I. 199; "Opp. Exh. __" refers to the exhibits attached to Pall's Opposition to Entegris' Opening Claim Construction Brief, D.I. 199-1; "Paul Decl. ¶__" refers to the Declaration of Igor Paul filed with Pall's Opposition to Entegris' Opening Claim Construction Brief, D.I. 200.

generators (*see id.* at 8-10) that do not appear to contain separation elements.  As the

humidification module of Sumitomo ("the humidifier") does not contain a separation element,

this Court implicitly construed the term "fluid processing module" as not requiring a separation

element.

> ### 2.   When Entegris Took A Position Before The USPTO It Construed "Fluid Processing Module" As "Fluid Processing Module"

Entegris, through its predecessor-in-interest Millipore, took a position before the USPTO

ten years ago and now attempts to explain away the implications of that decision by accusing the

examiner of making an error.  Pall has already stated in its memoranda that the examiner's

restriction requirement and the election of group II for further prosecution is dispositive in

construing "fluid processing module" as "not limited to a system including a filter, but to a fluid

processing module."  (Pall Mem. at 12-13; Pall Opp. at 12-16.)  Entegris admits "[t]he

prosecution history is particularly helpful for demonstrating 'how the PTO and the inventor

understood the patent.'"  (Entegris Br. at 11) (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317

(Fed. Cir. 2005) (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir.

1995)).  In justifying the restriction requirement, the examiner plainly stated that "[t]he manifold

of group II is <u>not limited to a system including a filter</u>, but to a fluid processing module."  (Exh.

J, ME070606) (emphasis added.)  The applicants elected group II to prosecute.  (*Id.* at

ME070649.)  The applicants clearly understood the differences between a "fluid processing

module" and a "separation module," because after electing group II to prosecute, the applicants

never referred to or argued for a "separation module" in any of the following responses to office

actions.  Now, Entegris' only answer to this clear statement from the examiner and election by

the patentee is that the examiner was "incorrect" and "mistaken."  (Entegris Resp. at 4.)  This is

improper.

Entegris' citation of *3M* in support of its argument is also improper.  Entegris cites *3M Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1373-74 (Fed. Cir. 2003) in support of its argument that the "applicants did not make any amendments or arguments in electing the group of claims to pursue."  (Entegris Resp. at 5.)  *3M* stands for two propositions with respect to disavowal of claim scope by the applicant.  First, *3M* states that if an applicant makes a broad statement to distinguish prior art and overcome a rejection by the examiner, and there is an express definition of the term in the specification, then the full breadth of the remark is not a clear and unambiguous disavowal of claim scope as required to depart from the meaning of the term provided in the written description.  *3M*, 350 F.3d at 1373.  Second, *3M* stands for the proposition that if an examiner makes a statement about a claim (say that the claim is in the product-by-process format), and the applicant never responds to that statement because the objection is overcome without the need to address it, then the applicant's silence is not "a clear and unmistakable surrender of claim scope."  *Id*.  Immediately after the discussion of these two propositions, the court in *3M* states, "[P]rosecution history . . . cannot be used to limit the scope of a claim <u>unless the applicant took a position</u> before the USPTO."  *Id*. (emphasis added)

A case squarely on all fours with the facts of this case is *Rambus, Inc. v. Infineon Tech. AG*, 318 F.3d 1081 (Fed. Cir. 2003).  In *Rambus*, the court was required to construe the claim term, "bus."  *Id*. at 1088.  Rambus, the patentee, argued that "bus" should carry its ordinary meaning in the art.  *Id*. at 1094.  Infineon said that "bus" required multiplexing, based on language in the detailed description.  *Id*.  The court found that several restriction requirements that were issued by the PTO "also clarif[ied] that some of the inventions described in the '898 application did not require the multiplexing bus."  *Id*. at 1095.  During prosecution of one of the patents in suit, the "PTO issued a two-way restriction, dividing the claims into two distinct

4

groups: a multiplexing bus group (Group I) and a latency invention group (Group II)." *Id*.  The

Federal Circuit stated:  "Rambus elected to prosecute the latency claims from Group II in the

'580 patent.  Therefore, the claims of the '580 patent do not require a multiplexing bus." *Id*.  An

applicant's election of a group is not "silence," it is "taking a position before the USPTO," and

this election governs.

The examiner was correct ten years ago and is still correct today – a "fluid processing

module" is "not limited to a system including a filter." Entegris attempts to import limitations

from preferred embodiments and its proposed construction is wrong for the reasons already

addressed in Pall's prior memoranda.  (Pall Mem. at 12-13; Pall Opp. at 12-16.)  Pall's proposed

construction is fully supported by the intrinsic evidence and should be adopted.  A "fluid

processing module" is "a fluid processing module."

**B.      "vent position"**

The parties' proposed constructions are reproduced below.

| Claim | Claim Term (*see* Exh. G) | Entegris' Proposed Construction | Pall's Proposed Construction |
|---|---|---|---|
| '907 claim 2 | "vent position" | A third connector on the fluid processing module which has the primary purpose of venting substantially all gas from the module. | A position on the fluid processing module which has the primary purpose of venting gas from the module. |

**1.      The Applicant's Chose To Claim A "Vent Position"**

The term "vent position" is only found in the '907 patent and this should be taken into

account in construing this claim term.  Entegris is wrong in requiring that a "vent position" must

be a connector.  Pall's position is the same as stated in its previous briefs – the applicants knew

how to claim a connector and chose to claim a "vent position."  (Pall Mem. at 14-16; Pall Opp. at 16-19.)

Entegris now argues that the "third" is merely to distinguish it from a "first" or a "second."  (Entegris Resp. at 7-8.)  First, as there is no requirement that a "vent position" be a connector, it is not a "third connector" as proposed by Entegris.  Second, Pall agrees that there is a convention for using "first," "second," "third," etc. in patent law, <u>when required</u>.  Claim 2 of the '907 patent is the only claim where "vent position" is found:

> 1.    A manifold construction for effecting fluid communication of a fluid processing module with a fluid feed source and a fluid outlet conduit which comprises:
>
>> a manifold housing including means for retaining a fluid processing module within said manifold housing,
>>
>> means for locking said fluid processing module into a first position within said manifold housing,
>>
>> means for positioning (a) a fluid inlet of said fluid processing module in sealing relationship with said fluid feed source and (b) a fluid outlet of said fluid processing module in sealing fluid communication with said fluid outlet conduit, and
>>
>> means for unlocking said fluid processing module from said first position.
>
> 2.    The manifold construction of claim 1 wherein said manifold is configured to receive a fluid processing module including a ***vent position*** that is in fluid sealing relationship with a vent outlet conduit fixed to said manifold when said fluid processing module is in said first position.

(Exh. B, '907 patent, claims 1 and 2) (emphasis added).  As can be seen, there is no need to use "first," "second," "third," etc. to distinguish the "vent position" from any other position in the claims of the '907 patent.  Entegris' added limitation that the "vent position" be a "third connector" is unwarranted and in error.

2.      **"Vent Position" Is Not Required To Vent "Substantially All" Gas**

Pall's proposed construction of "vent position" of the '907 patent does not require it to vent "substantially all" gas.  (*See* Pall Mem. at 24-25; Pall Opp. at 32-34.)  Entegris' improper limitation of this claim term by adding "substantially all" will be discussed below in conjunction with the term "gas vent."  *See* section II.H., below.

C.      **Entegris Is Wrong In Adding "Metered" And "Onto A Substrate, Such As A Semiconductor Wafer" To The Term "Dispense Pump"**

The parties' proposed constructions are reproduced below.

| Claim | Claim Term (*see* Exh. H) | Entegris' Proposed Construction | Pall's Proposed Construction |
|---|---|---|---|
| '667 Patent Claims 1 and 18 | "dispense pump" | A pump used to dispense in metered portions a fluid onto a substrate, such as a semiconductor wafer. | A pump used to dispense a fluid. |

Entegris attempts to distinguish Pall's citation of *Agfa* by stating that the court in *Agfa* consulted a dictionary, as Entegris does, to confirm a contemporaneous definition of the term at issue.  (Entegris Resp. at 10.)  First, "metered" is not found in the dictionary definition of "dispense" propounded by Entegris and Dr. Nayfeh.  (*Id.*)  Second, "metered" is not found in the claims, the specification, nor the prosecution history.   "Metered" is improperly added to Entegris' construction.  (Paul Decl. ¶¶16-20.)

Pall acknowledges that "dispense pump" is something more specific than "fluid pump apparatus."  (Pall Opp. at 21.)  The addition of "onto a substrate, such as a semiconductor wafer," however, goes too far.  This additional limitation improperly narrows this term and creates redundancies within the claims.  (*See id.*)  The specification describes a supposed invention that is broader than that which can be used solely in the semiconductor industry.  (*Id.* at 6-8.)  As neither the specification nor the prosecution history of the '667 patent impart a

special meaning to this term, this Court should adopt Pall's, and Dr. Nayfeh's 2006, construction, (*Id.* at 22), based on the plain meaning of this term.

### D.    "disposable"

The parties' proposed constructions are reproduced below.

| Claim | Claim Term (*see* Exhs. H-I) | Entegris' Proposed Construction | Pall's Proposed Construction |
|---|---|---|---|
| '667 Patent All Asserted Claims and '424 Patent Claims 7, 9, 11-13 | "disposable" | "Disposable" means that the module is installed and removed as a unit and can be disposed of after removal. When the separation element within the module needs replacement, the entire module is removed from the assembly and disposed of. | The term "disposable" is not an effective limitation.  Pall agrees with the Court when it found: "I conclude that the word 'disposable' does not breathe life or meaning into claim 2, but is rather merely a statement of what might be typically more desirable as a feature of the fluid separation module." |

### 1.    Entegris' Position Is Contrary To This Court's Prior Ruling Based Upon A Complete Record And Analysis

This topic has already been fully briefed in 2006 and this Court construed this term to be non-limiting in relation to claim 2 of the '667 patent.  (06-cv-10601, D.I. 41 at 6-7.)  Entegris' position is contrary to this Court's prior ruling.  Pall cites to and agrees with this Court's construction.  (06-cv-10601, D.I. 41 at 6-7.)  This Court's holding, relying on *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1346 (Fed. Cir. 2002), clearly discusses the non-limiting effect of the claim's preamble.  (06-cv-10601, D.I. 41 at 6-7.)  The "word 'disposable' does not breathe life or meaning" into claim 2 of the '667 patent.  (*Id.*)  The inclusion of the rest of the asserted claims of the '667 and '424 patents does not require a different construction.

Every claim in which "disposable" is not found in the preamble, is directed to a "quick-connect manifold assembly" or a "fluid processing system."  (Exh. C, '667 patent, col. 7, l. 15 to

col. 10, l. 55.)  As this Court stated in relation to claim 2 of the '667 patent, a "quick-connect manifold assembly" "requires only a fluid separation module as described that is capable of being inserted and then removed after use, not necessarily one that is disposable."  (06-cv-10601, D.I. 41 at 7.)  Although the claims may recite a "disposable" module, they do not claim such a feature.  *Syntex (U.S.A.) LLC v. Apotex, Inc.*, 407 F.3d 1371, 1378 (Fed. Cir. 2005) (Federal Circuit affirmed a district court ruling that a statement in the body of the claim was "only the intended result" of using the claimed structure, and was not limiting); *Bristol-Myers Squibb Co. v. Ben Venue Laboratories, Inc.*, 246 F.3d 1368, 1375 (Fed. Cir. 2001) (express dosage amounts in the claim body were material claim limitations, so claim language indicating the dosage amounts' intended effect was nonlimiting); *In re Gardiner*, 171 F.2d 313, 315-16 (C.C.P.A. 1948) (construing the term "central jet passage" - "[T]he word 'jet' is not a definition of the structure, but merely indicates the purpose for which the passage is used.  *It is trite to state that the patentability of apparatus claims must be shown in the structure claimed and not merely upon a use, function, or result thereof.*")  (emphasis added)

> **2.     The '667 And '424 Patent Specifications Do Not Define "Disposable Fluid Separation Module"**

Entegris states that the '667 and '424 patents define the term "disposable fluid separation module."  (Entegris Resp. at 12.)  As Pall stated in its previous brief, the '667 and '424 patents define a "disposable" type of fluid separation device and a "disposable module," but not a "disposable *fluid separation* module."  (Pall Opp. at 24.) (citing Exh. C, '667 patent, col. 2, ll. 1-15; Exh. D, '424 patent, col. 2, ll. 4-18.)  *3M*, 350 F.3d at 1371 (patentee may define a term when it "*clearly* act[s] as its own lexicographer.") (emphasis added)

### 3.   When "Disposable" Became An Issue, This Court Correctly Found It To Be Non-Limiting

Six years ago in ruling on Entegris' first preliminary injunction motion, this Court construed the term "a disposable separation module."  (03-cv-10392, D.I. 66 at 6.)[2]  The issue before the Court in 2004 was whether the prior art showed automatic alignment.  (*Id.* at 17-19.) Whether the modules found in the prior art were disposable separation modules was not at issue because several of the references cited by Pall had "a separation module that is installed and removed as a unit and can be disposed of after removal."  (*See Id*.)  It was not until two years later, in conjunction with the Sumitomo references and the '667 patent, that the claim term "disposable" was in issue.  There, the Court ruled that the term "disposable" was not limiting. (06-cv-10601, D.I. 41 at 5-7.)

### 4.   Expert Opinions Cannot Overrule Intrinsic Evidence

The patentees admit that both disposable and non-disposable modules, and modules where the separation element is attached to or not attached to the housing, were known prior to the filing date of the '770 patent.  ('667 patent, col. 1, l. 47 to col. 2, l. 34.)  How these modules, disposable or non-disposable – with separation elements attached or not attached – connect to a fluid processing system is the purported invention.  In the context of a preferred embodiment, the patentees propose that this "quick-connect" manifold can reduce spillage, exposure and contamination in the semiconductor industry.  (*See id*. at col. 4, ll. 9-24.)  Intrinsic evidence should be used to construe claim terms.  Even at the urging of an expert, Entegris' proposed construction that reads a preferred embodiment into a claim term should be rejected.  *Free Motion Fitness, Inc. v. Cybex Int'l, Inc.*, 423 F.3d 1343, 1351 (Fed. Cir. 2005).

---

[2] Entegris argues that the term construed in 2004 was "a disposable *fluid* separation module," however, the term construed by this Court, and the term found in the '770 patent, is "a disposable separation module."  (*See* 03-cv-10392, D.I. 66 at 6.)

E.     **"quick-connect manifold"**

The parties' proposed constructions are reproduced below.

| Claim | Claim Term (*see* Exh. H) | Entegris' Proposed Construction | Pall's Proposed Construction [Amended] |
|---|---|---|---|
| '667 Patent All Asserted Claims | "quick-connect manifold" | A manifold assembly for quick connection and disconnection of a disposable fluid separation module. | A manifold assembly that allows a module to be connected *and disconnected* quickly and easily to the fluid processing system. This quick connect engagement may be accomplished in a somewhat sequential arrangement. *See* Col. 2, ll. 35-47, col. 5, l. 62 to col. 6, l. 4. |

**1.     Pall Agrees That Quick-Connect Includes Disconnection**

In reviewing the intrinsic evidence and the progress of this matter since 2006, Pall amends its proposed construction of this claim term to include "and disconnected" as set forth above.

**2.     Entegris Improperly Adds The Limitation "Disposable"**

In its previous briefs, Pall stated that the specification defines "quick-connect" in the context of disposable separation modules.  (Pall Mem. at 20-21; Pall Opp. at 27.)  There is nothing in the specification, however, that defines the term "quick-connect manifold" to require that what is connected quickly to the manifold be disposable – this is another added limitation by Entegris.  (*Id*.)  The claims themselves could have narrowed what is being received by the manifold, as would have been the case if a claim would have been directed to a disposable fluid separation module.  Absent such a limitation, however, the construction of the claim term "quick-connect manifold" should not be so constrained.

Entegris misapplies *Pause Tech v. TiVo, Inc.,* 419 F.3d 1326 (Fed. Cir. 2005) -- twice. (*See* Entegris Resp. at 16 and 19.)  In each instance, the claim language as a whole, along with the other intrinsic evidence, calls for a construction that does not afford limitation status for either "disposable" or "separation" respectively.  *See, e.g., Syntex*, 407 F.3d at 1378; *In re Gardiner*, 171 F.2d at 315-16; *Rambus*, 318 F.3d at 1095.

### 3.     Any Engagement "Effected Rapidly And Eas[ily]" Is "Quick-Connect"

Pall's position remains the same as that in its previous briefs, if the mating connectors engage sequentially, as long as this engagement is "effected rapidly and eas[ily]," and is "essentially simultaneous" it is "quick-connect."  (Pall Mem. at 20-21; Pall Opp. at 26-27.)  This is simply following the language of the specification, and is consistent with the plain meaning of the claim language.  Entegris even admits that the specification describes "scenarios in which 'the mating connectors were engaged somewhat sequentially.'"  (Entegris Resp. at 17.)

### F.     "receptor"

The parties' proposed constructions are reproduced below.

| Claim | Claim Term (*see* Exh. H-I) | Entegris' Proposed Construction | Pall's Proposed Construction |
|---|---|---|---|
| '667 Patent Claims 2, 3, 5, 7, 8, 13, 14, 22, and 25-28, and '424 Patent Claim 2 | "receptor" | An element that receives the fluid separation module. | A "receptor" is an element that receives a module. By the doctrine of claim differentiation, the receptor does not need to be attached to the fluid connector member.  *See* '667 Patent Claim 3. |

### 1.     A "Receptor" Is Not Limited To Receiving A Separation Module

The specification describes a module receptor that can receive both a "separation module" and a "connector apparatus."  (Pall Mem. at 22; Pall Opp. at 29-30.)  The claims

themselves could have narrowed what is being received by the receptor, as would be the case if a claim would have been directed to a fluid separation module.  Absent such a limitation, however, the construction of the claim term "receptor" should not be so constrained.  Though the claims describe the "module receptor" as "receiving a disposable fluid separation module," this is merely a reference point used in describing the claimed elements of the quick-connect manifold assembly, and is not limiting.  *C.R. Bard, Inc. v. M3 Systems, Inc.*, 157 F.3d 1340, 1350 (Fed. Cir. 1998) (claims directed to a biopsy needle also recited a gun housing into which the needles fit – court ruled that "housing" was only a reference point and that "the gun structure was not part of the separate claims to the needles").  Therefore, Entegris' proposed construction limiting the term "receptor" to requiring it to receive *only* a fluid separation module should be rejected.

### 2.     The Receptor Is Not Always Attached To The Fluid Connector Member

As Pall has previously noted, the receptor in independent claim 2 of the '667 patent is silent as to whether it is attached to the fluid connector member – it is "configured with," which may call for it to be attached or not attached.  (Pall Mem. at 22-23; Pall Opp. at 28-29.)  In dependent claim 3 the receptor is attached to the fluid connector member.  (*Id*.)  Therefore, Entegris is wrong in demanding that the term "receptor" should be construed to require that it always be attached to the fluid connector member.

G.      **"Module" (As Contrasted With Entegris' Construction Of "Separation Module")**

The parties' proposed constructions are reproduced below.

| Claim | Claim Term (*see* Exh. H-I) | Entegris' Proposed Construction | Pall's Proposed Construction |
|-------|-----------------------------|----------------------------------|------------------------------|
| '667 and '424 Patents All Asserted Claims | "module" | An assembly meant to be removed and replaced as a unit. | An assembly capable of being removed and replaced as a unit.<br><br>By the doctrine of claim differentiation, there does not have to be a permanent connection between the separation element and the housing of the module. *See* '424 Patent Claim 13. |

Despite stating clearly in a footnote that "Pall declined to propose a construction for the term 'separation module,'" Entegris continues to reference Pall's construction of "module" under its proposed construction of "separation module." (Entegris Resp. at 20.) What Entegris placed in its table on page 32 of its opening brief and now on page 20 of its responsive brief in the box "Pall's Proposed Construction" for "separation module" is still in error.

1.      **The Intrinsic Evidence Uses "Capable Of"**

Entegris convolutes Pall's arguments regarding the construction of this term. Entegris' proposed construction begins with "an enclosed assembly *meant to be* removed and replaced as a unit…" Pall's proposed construction starts "An assembly *capable of being* removed and replaced as a unit." Both of the parties' constructions "remove and replace [something] as a unit." As stated in Pall's previous briefs, because the specification uses "capable of," Pall's language matches that of the specification. (Pall Mem. at 23-24; Pall Opp. at 31.) Entegris' intent-related language finds no support in the intrinsic evidence.

2.     **Entegris Proposed "Separation Module" For Construction And Now Seems To Desire The Construction Of "Disposable Fluid Separation Module"**

Entegris argues that "the separation element is permanently attached to the housing in the 'disposable fluid separation module.'"  (Entegris Resp. at 23.)  Entegris has already changed its mind once in seeking the construction of "separation module" instead of "module."  (*See* Exh. F.)  Now Entegris seems to be proposing the construction of "disposable fluid separation module."  The term Entegris proposes a construction for is "separation module" and Pall does not agree that this term should be construed as Entegris proposes.

As Pall has outlined in its previous briefs, the specification defines a "separation module."  (Exh. C, '667, col. 3, ll. 39-42; Exh. D, '424 col. 3, ll. 53-56.)  This "separation module" contains a separation element that may or may not be permanently attached to the housing of the module.  (Pall Mem. at 24; Pall Opp. at 31-32.)  Claim 13 of the '424 patent, however, is the only asserted claim that particularly claims that the separation element is permanently connected to the housing.  For all other asserted claims of the '667 and '424 patents, Entegris is wrong in requiring that there be a permanent connection between the separation element and the housing of the module.  *See Free Motion Fitness*, 423 F.3d at 1351.

H.     **"Gas Vent" Does Not Require The Extraneous Limitation "Substantially All"**

The parties' proposed constructions are reproduced below.

| Claim | Claim Term (*see* Exh. H-I) | Entegris' Proposed Construction | Pall's Proposed Construction |
|---|---|---|---|
| '667 and '424 Patents All Asserted Claims | "gas vent" | A connector which has the primary purpose of venting substantially all gas from the module. | Pall acquiesces to the Court's construction in that a "gas vent" is a gas vent which has the primary purpose of venting gas from the filter module. |

15

In keeping with its "the more limitations the better" approach, Entegris seeks to add the extraneous limitation of "venting substantially all gas" to a phrase that simply specifies the basic function of venting.  This Court has construed this claim term as "a gas vent which has the primary purpose of venting gas from the filter module." (06-cv-10601, D.I. 41 at 9.)  This construction should be confirmed.

As with several other instances discussed above, Entegris is again improperly attempting to import limitations from the preferred embodiment in the asserted claims.  Pall agrees with Entegris' position in 2006, when it argued to this Court that the plain meaning of the term "gas vent" is "a connector whose primary purposes is to vent air from the module."  (06-cv-10601, D.I. 41 at 8.)  Dr. Nayfeh stated in 2006 that "[a] third connector on the fluid connector member is a gas vent, and removes gas from the module."  (06-cv-10601, D.I. 9, ¶9, Opp. Exh. B.)  A "gas vent" should be construed as "a gas vent which has the primary purpose of venting gas from the filter module." (06-cv-10601, D.I. 41 at 9; *see also* Pall Mem. at 24-25; Pall Opp. at 32-34.)

I.     **"At Least One Connector That Is A Gas Vent From The Housing" Does Not Require The Extraneous Limitation "Substantially All"**

The parties' proposed constructions are reproduced below.

| Claim | Claim Term (*see* Exh. I) | Entegris' Proposed Construction | Pall's Proposed Construction |
|---|---|---|---|
| '424 Patent Claims 1, 2, 5, 14, 15, and 17 | "at least one connector that is a gas vent from the housing" | At least one connector of the separation module performs the primary function of venting *substantially all* gas from the interior of the housing. | At least one connector of the module is a gas vent. "Gas vent" has been construed by the Court. |

As stated by Pall in its previous briefs, other than the differing constructions of "gas vent," the parties constructions are similar.  (Pall Mem. at 34; Pall Opp. at 25-26.)  Pall's

construction uses this Court's previous construction for "gas vent" and Entegris utilizes an erroneous construction that requires the extraneous limitation "substantially all."  *See* prior section.

     **J.**    **The Separation Elements In The Claim Terms "A Separation Element Contained Within The Housing" And "A Separation Element Within The Housing" Are Not Required To Be Permanently Secured Within The Housing**

The parties' proposed constructions are reproduced below.

| Claim | Claim Term (*see* Exh. I) | Entegris' Proposed Construction | Pall's Proposed Construction |
|---|---|---|---|
| '424 Patent Claim 7 | "a separation element within the housing" | Plain meaning. | By the doctrine of claim differentiation, there does not have to be a permanent connection between any separation element and the housing.  *See* '424 Patent Claim 13. |
| '424 Patent Claims 1 and 5 | "a separation element contained within the housing" | Plain meaning. | By the doctrine of claim differentiation, there does not have to be a permanent connection between any separation element and the housing.  *See* '424 Patent Claim 13. |

Claim 7 of the '424 patent claims the "separation element within the housing."  Claim 13, directly dependent on claim 7, states "the separation element is permanently secured within the housing."  (Exh. D, '424 patent claim 13.)  Despite Entegris' assertions to the contrary, the patentees did not act as their own lexicographer in defining "disposable fluid separation module."  *See* above, Section II.D.  Moreover, this Court determined that "disposable," found here in the '424 patent in the preamble only, is non-limiting.  Therefore the separation element in claim 7 does not have to be permanently secured within the housing.  *SRI Int'l v. Matsushita*

*Elec. Corp.*, 775 F.2d 1107, 1122 (Fed. Cir. 1985) (en banc) ("It is settled law that when a patent claim does not contain a certain limitation and another claim does, that limitation cannot be read into the former claim in determining either validity or infringement.")

Claims 1 and 5 of the '424 patent claim "a separation element contained within the housing." As outlined above, claim 13, although not directly dependent upon either claims 1 and 5, further constrains this claim term. Entegris asserts that in as much as claim 13 is not directly dependent from either claim 1 or 5, then it cannot limit either claim. (Entegris Resp. at 25.) Compare, however, Entegris' citation of *Jonsson v. Stanley Works*, 903 F.2d 812, 818 (Fed. Cir. 1990) and *Boston Scientific SciMed, Inc. v. ev3 Inc.*, 502 F. Supp. 2d 931, 941-943 (D. Minn. 2007) for the assertion that "[claim differentiation] can also apply between independent claims and between claims in patents of the same family." (Entegris Br. at 12.) Here the claims are all from the '424 patent. As such, limited by claim 13, the separation element in claims 1 and 5 does not have to be permanently secured within the housing.

## III.   PALL PROVIDES EXPLANATORY CORRELATION BETWEEN CLAIM LANGUAGE AND AGREED-UPON CONSTRUCTIONS

Entegris is imagining problems with the agreed-upon yet curious "directional" claim language addressed in Pall's opening memorandum at pages 10-11 and in Entegris' responsive memorandum at Section IV. Pall does not seek to add anything to the agreed-upon claim construction language; Pall has simply provided some explanatory correlation between the claim language and the agreed-upon claim construction. The clarification seems appropriate and useful given, for example, the orientation of the Fig. 6 embodiment of the '667 patent which is shown in an orientation that does not actually fit the directional claim language.

IV.    **CONCLUSION – ENTEGRIS' CONSTRUCTIONS SHOULD BE REJECTED IN FAVOR OF PALL'S CONSTRUCTIONS**

Pall is confident that if the Court construes the disputed claim terms in the context of the

specification, prosecution histories, and this Court's prior rulings, the proper constructions—

Pall's constructions—will emerge.

Dated:  September 15, 2010

/s/ Gary R. Greenberg
H. Michael Hartmann
Mark E. Phelps
L. Scott Beall
LEYDIG, VOIT & MAYER, LTD
Two Prudential Plaza, Suite 4900
Chicago, IL 60601
(312) 616-5600

Gary R. Greenberg
Louis J. Scerra
GREENBERG TRAURIG LLP
One International Place,
Boston, Massachusetts 02110
(617) 310-6000

Attorneys For Defendant
PALL CORPORATION

19

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent via U.S. first class mail to those indicated as non-registered participants on September 15, 2010.

/s/ Gary R. Greenberg